961 P.2d 1162

**Lori Jean H. CAMERLINGO, nka Lori Jean H. Kim, Plaintiff–Appellee,**

v.

**Kirk CAMERLINGO, Defendant–Appellee,**

and

**Dorothy Camer, Intervenor–Appellant.**

No. 20775.

Intermediate Court of Appeals of Hawai'i.

July 20, 1998.

Dorothy Camer, intervenor-appellant, pro se, on the briefs.

Steven J. Kim, Lynch & Farmer, on the brief, Honolulu, for plaintiff-appellee.

John W. Schmidtke, Jr., on the brief, Honolulu, for defendant-appellee.

Before WATANABE, ACOBA and KIRIMITSU, JJ.

ACOBA, Judge.

We hold that Hawai'i Revised Statutes (HRS) § 571–46(7) (1993) does not mandate a court, upon a grandparent's request, to award the grandparent rights of visitation with his or her grandchild. Instead, HRS § 571–46(7) generally leaves the issue of "[r]easonable visitation rights" of grandparents to "the discretion of the court," while precluding the award of such rights if "it is shown that rights of visitation are detrimental to the best interests of the child[.]" Further, we hold that, in determining whether to award visitation rights to a grandparent pursuant to HRS § 571–46(7), a court may properly consider the effect of such an award on the visitation time of the non-custodial parent.

Accordingly, we conclude that the family court of the third circuit (the family court) correctly determined, under the circumstances of this case, that it was "not required to specifically establish separate rights of visitation for a grandparent when contact with the child is available to the grandparent during the visitation time of a parent." We also believe the family court's findings that it would not be in the best interests of the female child in the instant case (Child) to award specific rights of visitation to her paternal grandmother, Intervenor–Appellant Dorothy Camer (Grandmother), were not clearly erroneous. We therefore affirm the family court's May 19, 1997 findings of fact, conclusions of law, and order regarding visitation with Child.

## I.

### A.

On July 24, 1991, Child was born to Plaintiff–Appellee Lori Jean H. Camerlingo, nka Lori Jean H. Kim, (Mother) and Defendant–Appellee Kirk Camerlingo (Father).

Mother and Father married on July 6, 1992, separated on July 18, 1993, and divorced on October 22, 1993.

The October 22, 1993 divorce decree awarded custody of Child to Mother, with

restricted rights of visitation to Father. In relevant part, this decree provided:

18. [Father] can see [Child] once a week. Visits must be supervised by someone of [Mother's] choice. [Mother] will make bona fide efforts to attempt to have [Father] see [Child] more often if possible.

In February 1994, Mother and Father reconciled and lived together with Child until they separated again in January 1995.

### B.

On January 12, 1996, Father filed an order to show cause seeking a "specific visitation schedule" and unsupervised visitation for himself.

At a February 21, 1996 hearing, the family court orally ordered Mother and Father to consult with Dr. Theresia Presbrey (Dr. Presbrey) to obtain an evaluation of Child and themselves.[1] On February 26, 1996, the family court also entered a written order appointing a guardian ad litem (the guardian) for Child.

In an April 10, 1996 written order, the family court found that a psychological evaluation of Mother, Father, and Child "would be helpful ... in determining [Father's] rights of visitation" and thus reduced its oral order concerning Dr. Presbrey to written form. Finding also that "it would be in [Child's] best interests if a Guardian Ad Litem was appointed for [Child] to represent her interests in these proceedings[,]" the family court reiterated its prior order appointing the guardian and directed the guardian to "prepare a written report of his or her recommendations regarding [Father's] rights to unsupervised visitation with [Child] upon the completion of his or her investigation of th[e] issue."

On May 8, 1996, the guardian filed her written report. The guardian adopted Dr. Presbrey's recommendation that Father's visitation continue to be supervised until he successfully completed therapy and parent-

ing classes. The guardian also advised that Dr. Presbrey recommend, "when she feels the time is appropriate[,]" that Father be given unsupervised visitation.

On June 5, 1996, Mother's and Father's counsel stipulated that Father would continue his supervised visits with Child and would attend therapy and parenting classes.

### C.

On June 13, 1996, Grandmother filed a motion pursuant to Hawai'i Family Court Rules 7, 20, and 24[2] to intervene in the proceedings to gain rights of visitation with Child.

On July 29, 1996, the family court orally granted Grandmother's motion to intervene. Although apparently no written order to this effect was entered, Grandmother entered a *pro se* appearance and participated in the custody proceedings.

### D.

The family court heard evidence on September 13, October 14, and October 28, 1996, and March 21, 1997.

On May 19, 1997, the family court entered findings of fact (findings), conclusions of law (conclusions), and an order.

The findings pertinent to this appeal are as follows:

13. [Child's] immediate relatives live in several locations: [Mother] on [the island of O'ahu]; [Father] in Kona[, on the island of Hawai'i]; the maternal grandparents in Hilo[;] [Grandmother] in Maryland[;] and the paternal grandfather in California. *It would be difficult to grant specific visitation rights to each grandparent and still afford [Child] an adequate time with the non-custodial parent.*

. . . .

24. *Because of the intense hostility between the two families[,] it is in the best*

---

1. Hawai'i Revised Statutes (HRS) § 571–46(4) (1993) permits a court to "require an investigation and report concerning the care, welfare, and custody of any minor child of the parties."

2. Hawai'i Family Court Rules (HFCR) Rule 7 governs pleadings and the form of motions, HFCR Rule 20 concerns permissive joinder of parties, and HFCR Rule 24 sets forth rules for intervention in family court proceedings.

interests of all concerned that contacts with grandparents be arranged through the parent in that family. Because [Child] has parents and grandparents in five different locations, it is not in [Child's] best interests to attempt to accommodate each grandparent with a specific visitation schedule.

(Emphases added.)

The following conclusions are relevant to this appeal:

27. [HRS § ] 571–46(7) provides that visitation rights shall be awarded to parents and grandparents in the discretion of the [family] court unless it is shown that rights of visitation[ ] are detrimental to the best interests of the child.

28. [Mother] has failed to demonstrate that visitations with [Father] and [Grandmother] are detrimental to the best interests of [Child].

. . . .

30. [The family court] is not required to specifically establish separate enforceable rights of visitation[ ] for a grandparent when contact with the child is available to the grandparent during the visitation time of a parent.

(Emphases added.)

The order provided, in relevant part:

3. [Father] shall have the following rights of visitation[ ] with [Child]:

A. Over the next two months [Father] shall have four daytime visits with [Child]. These visits shall occur in the presence of some other adult who is known by [Child]. [Mother] may designate the visitation supervisor. If these visits go well, [Father] shall be allowed unsupervised daytime visits with [Child] at least twice a month for two additional months. If these visits go well, [Father] shall be allowed to visit with [Child] on weekends for up to twice a month on the island where he resides.

B. If the parents cooperate with the visitation schedule described above, and if all goes well, [Child] shall spend the second half of the Christmas holiday with [Father] in his home in Kona in 1997, and the first half of the summer with [Father] in the summer of 1998.[3]

. . . .

D. All visitations by [Father] and his family shall occur in the State of [Hawai'i] through the summer of 1998. Thereafter either parent may arrange for [Child] to visit mainland relatives during their [sic] time with [Child].

. . . .

4. The grandparents of [Child] are not awarded specific visitation rights. It is expected that each parent will share their [sic] time with [Child] with other members of their [sic] extended family on an appropriate and equitable basis. All of the grandparents are encouraged to write letters and to remember birthdays and special events in the life of [Child]. The custodial parent shall facilitate such contacts. All of the grandparents are also encouraged to keep in touch with [Child], but specific visitations must be arranged through their son or daughter during that parent's time with [Child].

(Emphases added.)

On June 10, 1997, Grandmother appealed the family court's findings, conclusions, and order.[4]

## II.

Grandmother contends that the family court abused its discretion under HRS § 571–46(7) when it denied her visitation rights with Child. She argues the terms of HRS § 571–46(7) are mandatory, in that that section provides a grandparent "shall" be awarded reasonable visitation rights. While we agree that the legislature has deemed grandparental visitation to be important, we

---

**3.** The record does not indicate whether this visitation schedule was adhered to while the appeal by Intervenor–Appellant Dorothy Camer (Grandmother) has been pending.

**4.** Defendant–Appellee Kirk Camerlingo (Father) did not appeal the May 19, 1997 findings of fact (findings), conclusions of law (conclusions), and order of the family court of the third circuit (the family court). However, Father filed an answering brief in support of Grandmother's position.

do not concur with this interpretation of HRS § 571–46(7).

## A.

■ In construing statutes, we bear in mind that "our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." *Mathewson v. Aloha Airlines, Inc.,* 82 Hawai'i 57, 71, 919 P.2d 969, 983 (1996) (internal quotation marks and citation omitted). HRS § 571–46 provides, in relevant part:

> In the actions for divorce, separation, annulment, separate maintenance, or any other proceeding where there is at issue a dispute as to the custody of a minor child, the court, during the pendency of the action, at the final hearing, or any time during the minority of the child, may make an order for the custody of the minor child as may seem necessary or proper. In awarding the custody, the court shall be guided by the following standards, considerations, and procedures:
>
> . . . .
>
> (7) *Reasonable visitation rights shall be awarded to* parents, *grandparents,* and any person interested in the welfare of the child *in the discretion of the court, unless it is shown that rights of visitation are detrimental to the best interests of the child* [.]

(Emphases added.)

■ Grandmother argues that the use of the word "shall" in the statute means that the court must award reasonable rights of visitation unless such visitation would demonstrably be against the child's best interests, and that "[t]he court's discretion [under HRS § 571–46(7) ] lies only in determining the frequency and extent of visitation." We cannot accept this reading of the statute. The statute provides that "[r]easonable visitation rights shall be awarded . . . *in the discretion of the court,*" HRS § 571–46(7) (emphasis added), and does not compel the court to award such rights upon request or limit its discretion only to that of fashioning the terms of the rights. The Alabama Court of Civil Appeals, interpreting an Alabama statute stating that " '*[a]t the discretion of the court,* visitation rights for grandparents of minor grandchildren *shall* be granted[,]' " concluded that the statutory provision "does not require that the trial court award visitation rights to grandparents, but merely allows the court to do so at its discretion." *Stricker v. Stricker,* 474 So.2d 1146, 1148 (Ala.Civ.App.1985) (quoting Ala.Code § 30–3–4 (1975)) (emphases added). We similarly interpret the term "shall" in HRS § 571–46(7), when used with the phrase "in the discretion of the court," to signify that reasonable visitation rights are to be granted subject to the court's properly exercised discretion.

## B.

■ Grandmother also contends "HRS [§ ] 571–46(7) mandates that grandparents be granted visitation once the court has found no detriment to the best interest of the child." We agree the words "unless it is shown that rights of visitation are detrimental to the best interests of the child" in HRS § 571–46(7) mean that a family court is prohibited from awarding visitation rights if such a showing of detriment is made. In our view, however, a family court otherwise retains discretion to award or not to award rights of visitation.

Accordingly, we do not regard the statute as limiting a family court's discretion to deny rights of visitation only in the instance where a detriment to the best interests of the child has been demonstrated. To construe the statute in this way would render the words "in the discretion of the court" meaningless. As this case illustrates, see discussion, *infra,* it is conceivable that factors other than a detriment to the best interests of the child may militate against a grant of visitation rights.

## III.

Based on her interpretation of HRS § 571–46(7), Grandmother maintains that the family court erred in concluding that it was "not required to specifically establish separate enforceable rights of visitation for a

grandparent when contact with the child is available to the grandparent during the visitation time of the parent." Conclusions of law are reviewed under the right/wrong standard. *Wharton v. Hawaiian Elec. Co.*, 80 Hawai'i 120, 122, 906 P.2d 127, 129 (1995). Under the circumstances of this case, we do not believe the family court was in error.

### A.

■ In determining whether the family court might properly consider the effect of a grandparent's visitation rights on a parent's visitation rights, we may look to statutes related to HRS § 571–46(7). "[L]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other." *Richardson v. City and County of Honolulu*, 76 Hawai'i 46, 55, 868 P.2d 1193, 1202 (internal quotation marks and citation omitted), *reconsideration denied*, 76 Hawai'i 247, 871 P.2d 795 (1994). HRS § 571–46.3 (1993) was enacted to address the ambiguity in HRS § 571–46(7) "as to whether an independent action can be brought by a grandparent when a parent has died and hence no divorce, separation, annulment, or separate maintenance proceeding is pending." Sen. Conf. Com. Rep. No. 30, in 1993 Senate Journal, at 752. Although a proceeding under HRS § 571–46.3 commences from a different procedural starting point than HRS § 571–46(7), both govern grandparents' reasonable visitation rights.[5] Hence, we look to HRS § 571–46.3 and its legislative history for guidance on whether the granting of visitation rights to a grandparent under HRS

§ 571–46(7) is in the child's best interest when such rights may affect the visitation rights of a non-custodial parent.

HRS § 571–46.3 provides, in relevant part, that,

*[a] grandparent or the grandparents of a minor child may file a petition* with the court *for an order of reasonable visitation rights.* The court *may* award reasonable visitation rights provided that the following criteria are met:

(1) This State is the home state of the child at the time of the commencement of the proceeding;

(2) Reasonable visitation rights are in the best interests of the child; and

(3) Either or both of the child's parents are deceased, or the child's parents are divorced or residing separate and apart.[6]

(Emphases added.) While recognizing that a grandparent may bring a separate action for visitation rights, the legislature, in enacting HRS § 571–46.3, expressed its concern that a parent's visitation rights not be eroded by an award of grandparental visitation rights:

Your Committee believes that the Judiciary's second concern, regarding this bill's possible interference with the rights of the parents, is addressed by your Committee's inclusion in the criteria that such visitation be in the best interests of the child. *The award of the grandparent's visitation is not meant to be at the expense of the parents' relationship with the child and*

---

**5.** HRS § 571–46.3 (1993) is not directly applicable to the present case because Grandmother intervened in the proceeding under HFCR Rule 24. HRS § 571–46.3 is applicable when a grandparent files a petition with the court for an order of reasonable rights of visitation. Thus, because Grandmother chose to intervene rather than to file a petition for visitation, HRS § 571–46(7) (1993) is the applicable statutory provision for the determination of Grandmother's rights of visitation in the present proceeding.

The legislative history of HRS § 571–46.3 makes clear that grandparents can seek visitation rights under either HRS §§ 571–46.3 or 571–46(7) if they meet the statutory requirements under the respective sections. Sen. Conf. Com. Rep. No. 30, in 1993 Senate Journal, at 752 ("This measure is not meant to restrict, in any manner, a grandparent's rights or remedies re-

garding visitation pursuant to [HRS § ] 571–46(7)[.]'').

**6.** HRS § 571–46.3 was amended earlier this year to delete this third requirement. *See* Act 20, 1998 Legislature. The purpose of the amendment was "to allow a grandparent of a minor child to file a petition for an order of reasonable visitation rights even in situations where the parents are still residing together." Hse. Stand. Com. Rep. No. 611, 1998 Legislature; Sen. Stand. Com. Rep. No. 2981, 1998 Legislature. The report by the Senate Judiciary Committee "acknowledge[d] that the fundamental thrust of this measure [was] to provide additional support for children, and not place the rights of the grandparents before those of the children." Sen. Stand. Com. Rep. No. 2981, 1998 Legislature.

*the best interests of the child.* Your Committee believes that usually, absent special circumstances, it is in the best interests of the child to have reasonable visitation with the parents. *If the visitation of the grandparents would adversely affect the reasonable visitation of the parents, it would probably not be in the best interests of the child to permit the grandparents' visitation.*

Hse. Stand. Com. Rep. No. 514, in 1993 House Journal, at 1181 (emphases added); *see also* Sen. Stand. Com. Rep. No. 1053, in 1993 Senate Journal, at 1154 ("[Y]our Committee is also concerned that the rights and interests of the parents or custodians not be jeopardized[.]"). In light of this legislative statement, we believe that under HRS § 571-46(7), it was within the family court's discretion to evaluate the effect of awarding visitation rights to grandparents on the visitation rights of a non-custodial parent.

## B.

### 1.

In conjunction with the foregoing matter, Grandmother challenges findings 13 and 24.[7] We review findings of fact under the clearly erroneous standard. *Romero v. Hariri*, 80 Hawai'i 450, 456, 911 P.2d 85, 91 (App.1996). "A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, [we are] nonetheless left with a definite and firm conviction that a mistake has been made." *Id.* (internal quotation marks and citation omitted).

Although the family court concluded that Mother had not proven that reasonable rights of visitation with Grandmother would be detrimental to the best interests of Child, finding 13 stated that "[i]t would be difficult to grant specific visitation rights to each grandparent and still afford [Child] an adequate time with the non-custodial parent." Further, in finding 24, the family court determined that "[b]ecause of the intense hostility between the two families[,] ... contacts with grandparents [should] be arranged through the parent in that family[,]" and "[b]ecause [Child] has parents and grandparents in five different locations, it is not in [Child's] best interest to accommodate each grandparent with a specific visitation schedule." Grandmother challenges these findings on the basis that grandparental visitation is important to Child's welfare and that the location of the grandparents' homes should not preclude their rights to specific visitation, especially in light of the convenience of air travel.

### 2.

■ Despite these challenges, we do not consider the family court's findings to be clearly erroneous. The family court's visitation order indicates an attempt to mitigate the effect of hostility between the families and to provide Father with increased visitation. Specific visitation schedules for grandparents in various locations could serve to disrupt the plan of increasing Father's time with Child. Based on our discussion of the relationship between HRS §§ 571–46(7) and 571–46.3, considerations of the families' relationship, the grandparents' locations, and the effect of separate grandparental visitation rights on the non-custodial parent's visitation were proper bases in this case upon which the family court concluded that grandparen-

---

**7.** In addition, Grandmother challenges findings 9, 17, and 23. Finding 9 excluded an evaluation that Grandmother sought to introduce into evidence on the ground that it was hearsay and the preparer of the evaluation was not available for cross-examination. Because we hold, *infra*, that the family court properly considered the locations of the parents and grandparents in finding that a specific grandparental visitation schedule was not in the best interests of the child in the instant case (Child), we need not address the exclusion of evidence which would have purportedly demonstrated that Child's visitation with Grandmother alone would not have been detri-

mental. Moreover, the exclusion of the report is immaterial, since the family court concluded that Plaintiff-Appellee Lori Jean H. Camerlingo, nka Lori Jean H. Kim, (Mother) failed to demonstrate that visitation with Grandmother would not be in Child's best interests.

Findings 17 and 23 concern allegations of domestic abuse and communications between Mother and Father. As such, these findings have no bearing on an award of visitation rights to Grandmother. Neither Mother nor Father has appealed the family court's findings, conclusions, and order.

tal visitation should take place during the time of parental visitation. Even though Grandmother is as yet the only grandparent to request specific visitation time, we cannot conclude that the family court erred in not permitting her visitation time separate from Father's, while attempting to accommodate increased contact between Father and Child.[8]

## IV.

Grandmother additionally argues that the family court "abused its discretion when it failed to determine the best interest of [Child]." We find Grandmother's contentions with respect to this point to be without merit.

## A.

■ Grandmother initially maintains that the family court erred by not specifying the factors it considered in determining Child's best interest. She lists factors that other states have adopted in determining custody and visitation matters. Hawai'i law, as Grandmother recognizes, does not enumerate the same factors. However, she maintains "[w]ithout such factors, judges may rely on subjective value judgments and subconscious biases, rather than fully analyzing the best interest [of the child]."

Grandmother's argument may be one that is best addressed to the legislature. Under the existing statute, the family court was required to consider the best interests of Child. It ordered a social study, and its findings indicate it reviewed numerous factors germane to the welfare of Child. The family court, thus, did consider the factors relevant to this custody case. Hence, we must also reject Grandmother's assertion that "the [family court] has consistently ignored the best interest of [Child] in [its] determination" as having no basis in the record.

## B.

■ In addition to the family court's general alleged failure to consider Child's best interests, Grandmother also contends for various reasons that it is not in Child's best interest to be "abandoned" to Mother's custody. We conclude that such reasons are not relevant to the family court's findings that a specific *grandparental* visitation schedule was not in Child's best interests.

## V.

Grandmother maintains that the family court abused its discretion by issuing an order that is "inconsistent and unrealistic" because the order provides (1) that "[a]ll of the grandparents are encouraged to write letters and to remember birthdays and special events in the life of [Child]"; (2) for an increase in Father's visitation "if all goes well"; and (3) that paternal grandparents' visitation take place at the same time as Father's. "An abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded substantial principles of law or practice to the substantial detriment of a party litigant." *Richardson v. Sport Shinko (Waikiki Corp.)*, 76 Hawai'i 494, 504, 880 P.2d 169, 179 (1994) (internal quotation marks and citation omitted).

## A.

■ Grandmother alleges that Mother is so hostile to her that it is unrealistic to write to Child because Mother refuses to disclose her address and refuses to speak to Grandmother. She contends that it is also unrealistic to expect that Mother will transmit the writings and gifts to Child. Since we cannot determine from the record that Mother has in fact refused to provide her address to Grandmother,[9] we cannot conclude an abuse

---

8. We recognize that the visitation schedule set by the family court may have, at first, posed practical problems for Grandmother, who lives in Maryland, to visit Child during Father's daytime visits with Child. We believe, however, that such problems would be alleviated by the increased visitation provided to Father under the proposed schedule.

9. With respect to Mother's purported refusal to disclose her address, Grandmother cites a portion of the transcript where Mother's attorney asked her, "Currently, where are you living without disclosing the address?" Mother responded that she was living on O'ahu. It is not clear from this portion of the transcript why the question

of discretion has occurred, and thus need not remand for the family court to resolve this issue.

We observe, however, that it would seem apparent that some mechanism must exist for the grandparents' communications with Child to reach her, given the family court's order providing that "[a]ll grandparents are encouraged to write letters and to remember birthdays and special events in the life of [Child.]" If no means exist for the grandparents' communications to reach Child, and/or if Mother refuses to transmit writings or gifts to Child, these issues may properly be brought before the family court for resolution if and when they arise.

## B.

Grandmother points out that the order provides Father with increased visitation "if all goes well," but that the family court does not define that phrase. According to Grandmother, this permits Mother to arbitrarily control Father's visitation.[10] However, viewed in context, the phrase obviously refers to satisfactory compliance with the specific visitation schedule contained in the order. While the family court's use of the phrase "if all goes well" is somewhat ambiguous, viewing the family court's decision as a whole, we do not believe it abused its discretion.

## C.

Grandmother lastly asserts that the family court's direction that her visitation be scheduled through Father effectively denies her visitation because of the strict limits placed on Father's visitation. She further asserts that her visitation should not be dependent on Father's good will in permitting her time with Child. Thus, she believes the

family court abused its discretion in not awarding her specific visitation rights.

We have upheld the family court's determination that it "is not required to specifically establish separate rights of visitation for a grandparent when contact with the child is available to the grandparent during the visitation time of a parent." We discern no difficulty with this conclusion under the specific circumstances of this case. However, as a broad proposition, we do not concur with it. Visitation rights for grandparents do not hinge on the visitation rights of a parent, since HRS § 571–46.3 recognizes that a grandparent may file an independent action for his or her own visitation with a grandchild. If Grandmother's concern materializes and she is denied visitation with Child through Father, she can then petition the family court to modify the order [11] or file for specific visitation rights with Child.[12] Such a petition would of course be subject to all considerations relevant to the family court's determination. Because the present order does not deny Grandmother visitation with Child, her speculation as to whether her future visitation with Child will be obstructed should be addressed if and when that situation arises.

## VI.

For the foregoing reasons, the May 19, 1997 findings, conclusions, and order are affirmed.

---

was phrased in such manner, or whether Mother was withholding her address from Grandmother.

10. As previously noted, Father has not appealed this language of the order.

11. HRS § 571–46(6) (1993) provides that "[a]ny custody award shall be subject to modification or change whenever the best interests of the child require or justify the modification or change and,

wherever practicable, the same person who made the original order shall hear the motion or petition for modification of the prior award[.]"

12. HRS § 571–46.3 specifically provides a remedy for Grandmother's concern that her visitation with child will be dependent on Father's good will.