31 P.3d 230

**CHILD SUPPORT ENFORCEMENT AGENCY, State Of Hawaii, and Melinda Perez Pardella, Plaintiffs–Appellees,**

v.

**Craig Ng CARLIN aka Craig Ng, Defendant–Appellant.**

**No. 22779.**

Intermediate Court of Appeals of Hawai'i.

Sept. 5, 2001.

Brian J. De Lima (Crudele, De Lima & Shiroma), on the briefs, Hilo, for defendant-appellant.

Anson K. Lee, Deputy Corporation Counsel, on the briefs, Hilo, for plaintiff-appellee.

BURNS, C.J., and LIM and FOLEY, JJ.

Opinion of the Court by LIM, J.

Defendant–Appellant Craig Ng (Ng) appeals the family court of the third circuit's August 12, 1999 Findings of Fact, Conclusions of Law, and Order Re: Child Support and Back Non AFDC Child Support (the Order) that granted current child support and retrospective child support in favor of Plaintiffs–Appellees, Child Support Enforcement Agency, State of Hawai'i (CSEA), and

Melinda Perez Pardella (Pardella), the mother of the child.[1]

On appeal, Ng contests the family court's award of child support to Pardella for the period from the date of her son's birth up to the filing date of the petition (pre-petition support).[2] Ng contends (1) that the family court erred in awarding pre-petition support because the Interstate Family Support Act (IFSA), Hawai'i Revised Statutes (HRS) chapter 576B (Supp.2000), allows an award of child support only from the date of filing of the petition; and (2) that the family court erred in applying Hawai'i Family Court Rules (HFCR) Rule 15(b) (1999) to amend Pardella's petition to add a specific claim for pre-petition support. We disagree and affirm the Order.

## I. Background.

On December 2, 1998, CSEA filed in the family court of the third circuit an IFSA petition it had received from Pardella, a resident of Puerto Rico. The petition was a pre-printed form, provenance apparently Puerto Rico, that contained, for purposes of allegation, information and prayer, numerous labeled boxes to be checked off and entitled blanks to be filled in. Pardella had executed the petition on October 19, 1998, in San Juan, Puerto Rico. Pardella neglected, however, to check off a verification box above the signature block that read, "Under penalties of perjury, all information and facts stated in this petition are true to the best of my knowledge and belief."

The IFSA authorizes the state responding to an interstate support petition, in this case Hawai'i, to commence a support proceeding at the request of the transmitting petitioner in the other state. HRS §§ 576B–305(a) &

576B–307. The definition of "State" found in the IFSA includes Puerto Rico. HRS § 576B–101 (Supp.2000).

In her petition, Pardella alleged that Ng, a resident of Hawai'i, is the noncustodial father of her son, born on December 1, 1989, and requested an award of child support from him. Pardella and Ng were never married. The petition contained labeled, check-off boxes enabling the petitioner to request nine different types of relief. Pardella checked off the boxes labeled, "Establishment of Order for: ... Child Support[.]" She did not mark the box labeled, "Support for a prior period; From: _____ To _____[,]" nor did she otherwise specifically request collection of child support arrears or retrospective child support.[3]

Ng was personally served with the petition on January 7, 1999. On January 27, 1999, he appeared *pro se* at the initial court hearing. During the hearing, CSEA twice informed Ng and the family court that Pardella was seeking "current and back child support[.]" Also, the court confirmed Ng's understanding that trial was to be set "on the issue of child support and arrearages." The pretrial order that issued out of the hearing set trial for February 26, 1999, and identified the issues for trial as "current child support and back non-AFDC child support."

In his February 9, 1999 answer to Pardella's petition, Ng, still *pro se*, generally denied all allegations in the petition. He specifically denied that he was the child's "presumed father."

On February 26, 1999, Ng appeared in court with counsel. Ng's attorney informed the court that the parties wanted to proceed with genetic paternity testing, and upon set-

---

1. The Honorable Riki May Amano presided over this case.

2. The family court awarded a total of $34,400.00 in child support for the period from the child's date of birth, December 1, 1989, to the date of the final hearing on the petition, July 16, 1999. Craig Ng (Ng) does not contest on appeal the portion of this award attributable to the period from December 2, 1998, the filing date of the petition, to July 16, 1999. Nor does he contest the award of current child support.

3. In addition to check-off boxes to request child support and child support for a prior period, the petition also provided check-off boxes to request establishment of paternity, spousal support, medical coverage, attorneys fees' and costs, paternity testing costs, modification of a support order and, "Other remedy sought." Melinda Perez Pardella (Pardella) did not mark the box to request establishment of paternity. Attached to the petition was a Commonwealth of Puerto Rico certification of birth, signed by Ng as father of the child, naming him as father of the child.

tlement of the paternity issue, the contingent issues remaining for trial would be "support and, um, the amount of any arrearage." Ng's attorney reiterated the same two contingent issues later in the hearing. At the same hearing, CSEA twice confirmed that the two issues for trial contingent upon settlement of the paternity issue would be "number one, child support; number two, back child support." The order issuing out of the February 26, 1999 hearing specified that the continued "trial in this matter [will be] on the issues of current and permanent child support pursuant to the current Child Support Guidelines and back non-AFDC child support[.]" Ng had filed various objections to the order proposed to the court by CSEA but none of those objections addressed inclusion of the issue of retroactive child support for trial.

Based upon the genetic test results, Ng admitted paternity. On June 14, 1999, Pardella submitted an affidavit with attached documents, containing information about her income and expenditures for the benefit of her son from 1989, the year of his birth, to date.

On June 16, 1999, the petition came on for trial. At the outset of the hearing, Ng objected to the introduction of any evidence because Pardella had allegedly failed to verify her petition. After much discussion, the parties resolved the verification dispute by agreeing that Pardella could cure any verification problem that might exist by filing an *ex post facto* verification of her petition. After that was settled, there was little time for any other business to be concluded, except for a stipulation that some financial documents could be admitted into evidence as exhibits. The exhibits included financial records of both Ng and Pardella, dating back to years well before the date of the petition (1992 for Ng and 1990 for Pardella). The order issuing out of the June 16, 1999 hearing continued the trial to July 16, 1999, "on the issues of current child support and back non-AFDC child support." Ng filed no objections to the substance of this order. On July 12, 1999, Pardella filed an affidavit "reaffirm[ing]" her verification of the petition.

On July 15, 1999, essentially mid-trial, Ng submitted an untimely trial memorandum. In his trial memorandum, Ng again conceded paternity, and also conceded Pardella's entitlement to "current child support pursuant to the support guidelines." However, Ng objected, for the first time, to the award of child support for any period prior to the filing date of the petition. He argued that HRS chapter 576B "only provides for establishment of support. Establishment of support does not permit retroactive application to the birth of the child[.]" Ng did not base his objection upon Pardella's failure to specifically pray for retrospective child support in her petition.

Trial on the petition was concluded on July 16, 1999. At the beginning of the final trial day, the parties stipulated into evidence another CSEA exhibit, a summary of financial information for both parties for the years 1989 to 1999, gleaned from the CSEA exhibits admitted into evidence during the June 16, 1999 trial day. In the course of discussing the stipulation, Ng's counsel revealed that his trial strategy was, for the most part, to concede the facts and argue the law:

> Your Honor, he—[CSEA's counsel] indicated this would be a summary to assist the Court. I do not object to the Court reviewing this summary in arriving at any conclusion as to the amount. And, ah, my only concern—and I'm not stipulating to numbers for 1989, 1990, and 1991. And I told [CSEA's counsel] that. Because there is no child support worksheet that's been prepared for those years.
>
> . . . .
>
> [CSEA's counsel] did prepare worksheets from 1992 to present. We have no dispute as to the accuracy of those worksheets. And basically, Your Honor, we're not going to quarrel with the numbers from 1992 through the present time, okay.
>
> The matter that's going to—the reason we're having this trial is a matter of law as to the application for support and whether it should be permitted to go retroactive back to 1989."

Ng's counsel did not specify the basis for opposition as a matter of law. He did not, in any event, cite Pardella's failure to include a

specific prayer for retroactive child support in her petition.

After the financial summary was stipulated into evidence, CSEA and Pardella rested. Thereupon, Ng began his case by briefly questioning Pardella about income she had earned since the birth of her child. Then Ng took the stand in his own behalf, and under questioning from his attorney, testified about his income over the course of the years from 1989 to 1999. CSEA's attorney cross-examined Ng on the same matters, without any intervening objections.

During closing arguments, Ng for the first time raised the issue of Pardella's failure to specifically request retrospective child support in her petition, arguing that it was a jurisdictional defect that prevented the court from entertaining the issue of pre-petition support.

On August 12, 1999, the court entered the Order. The Order included the following relevant findings of fact, conclusions of law and orders:

### FINDINGS OF FACT

1. The [IFSA] Petition filed herein on December 2, 1998, does in fact seek establishment of a support order;

2. While said [IFSA] Petition does not include an express request for support for a prior period, the Court's Order Setting Case for Trial and Setting Pre Trial [sic] Deadlines filed herein on February 9, 1999, pursuant to a hearing on January 27, 1999, put all parties on notice that the issue of back non-AFDC child support was an issue to be litigated at trial in this case.

3. Furthermore, all court hearings held since the January 27, 1999, hearing involved and dealt with the issue of back non-AFDC child support, including the correct amount of same, and by reference referred to arrearage amounts.

4. The testimonies of [Ng] and [Pardella], taken at the continued trial hearing of July 16, 1999, were considered by this Court, including CSEA's exhibits "1", "2" and "3" admitted into evidence at the initial trial hearing of June 16, 1999.

. . . .

9. Rule 15(b), [HFCR], which allows amendments of pleadings to conform to the evidence presented at trial on issues tried by express or implied consent of the parties, was also considered by this Court, pursuant to the request by CSEA at the trial hearing of July 16, 1999 to do so.

### CONCLUSIONS OF LAW

. . . .

1. [Ng] had sufficient notice, substantially in advance of his trial, of the fact that back non-AFDC child support was an issue to be litigated at trial.

2. [Ng] as the father of the subject child, . . . owes back child support for said child back to the time of the latter's birth.

. . . .

4. The [IFSA] Petition filed herein should be and is amended to conform to the evidence presented at trial to include the issue of back child support owed by [Ng].

### ORDER

. . . .

1. That [Ng], . . . shall pay child support in the amount of $360.00 per child per month for a total of $360.00 per month[.]

. . . .

3. That [Ng] hereby owes the custodial parent, [Pardella], $34,400.00 in back non-AFDC child support[.]

On August 27, 1999, Ng filed a timely notice of appeal from the Order.

### II. Standards of Review.

#### A. The Court's Findings of Fact and Conclusions of Law.

 A circuit court's conclusions of law are reviewed *de novo* under the right/wrong standard. "Under the right/wrong standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it." *State v. Meyer*, 78 Hawai'i 308, 311, 893 P.2d 159, 162 (1995) (citations and internal quotation marks omitted). However,

[w]e review findings of fact under the clearly erroneous standard. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, we are nonetheless left with a definite and firm conviction that a mistake has been made.

*Camerlingo v. Camerlingo,* 88 Hawai'i 68, 74, 961 P.2d 1162, 1168 (App.1998) (brackets, citations, and internal quotation marks omitted).

### B. Statutory Construction.

 The standard of review for statutory construction is well-established. The interpretation of a statute is a question of law which this court reviews *de novo*. In addition, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning. Finally, in determining the purpose of the statute, we are not limited to the words of the statute to discern the underlying policy which the legislature seeks to promulgate but may look to relevant legislative history.

*State v. Wells,* 78 Hawai'i 373, 376, 894 P.2d 70, 73 (1995) (brackets, citations, ellipsis and internal quotation marks omitted). Furthermore,

we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool. This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning. Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another.

*State v. Rauch,* 94 Hawai'i 315, 322, 13 P.3d 324, 331 (2000) (block quote format, brackets, citations, ellipses and internal quotation marks omitted).

### C. Hawaii Rules of Civil Procedure (HRCP) Rule 15.

 "When interpreting rules promulgated by the court, principles of statutory construction apply." *State v. Lau,* 78 Hawai'i 54, 58, 890 P.2d 291, 295 (1995) (citation omitted.)

 In interpreting HFCR Rule 15(b), the cases and treatises interpreting cognate rules of civil procedure are persuasive authority in parsing the HFCR. *Hayashi v. Hayashi,* 4 Haw.App. 286, 290 n. 6, 666 P.2d 171, 174 n. 6 (1983) ("Rule 60(b), HFCR, is similar to Rule 60(b), Hawaii Rules of Civil Procedure (HRCP) and Rule 60(b), Federal Rules of Civil Procedure (FRCP), except for some minor variations which do not affect the provisions concerned here. Therefore, the treatises and cases interpreting HRCP, Rule 60(b) and FRCP, Rule 60(b) provide persuasive reasoning for the interpretation of HFCR, Rule 60(b).").

 "Although the court below has wide discretion in deciding a [HRCP] Rule 15(b) motion to amend, its decision will be overturned if an abuse of that discretion occurred." *Hamm v. Merrick,* 61 Haw. 470, 473, 605 P.2d 499, 502 (1980) (citations omitted). An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 114, 839 P.2d 10, 26 (1992) (citation omitted).

## III. Discussion.

*A. The IFSA Does Not Prohibit a Responding Tribunal From Granting a Petitioner Child Support for Periods Prior to the Filing of the Petition.*

■■ Ng first contends that the IFSA prohibits a responding tribunal from awarding child support for periods prior to the filing date of the petition. In his opening brief, Ng argues that

> [u]nder the provisions of [HRS § ] 576B–401, the court is authorized to establish a support order as of the date of filing of the petition. There are no provisions for establishment of an arrearage amount prior to the filing of the petition. In fact, the provisions of [HRS § ] 576B–401 only provides [sic] for a temporary order of support under certain conditions and makes no mention of retroactive application to the date of birth.

Opening Brief at 12.

According to the rules of statutory construction, "we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." *Rauch,* 94 Hawai'i at 322, 13 P.3d at 331 (citations and internal block quote format omitted). And "where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning." *Wells,* 78 Hawai'i at 376, 894 P.2d at 73 (citation and internal quotation marks omitted).

Hence, we examine the plain language of the entirety of the statute relied upon by Ng. HRS § 576B–401 (Supp.2000) provides:

> **Petition to establish support order.** (a) If a support order entitled to recognition under this chapter has not been issued, a responding tribunal of this State may issue a support order if:
>
> (1) The individual seeking the order resides in another state; or
>
> (2) The support enforcement agency seeking the order is located in another state.
>
> (b) The tribunal may issue a temporary child support order if:

(1) The respondent has signed a verified statement acknowledging parentage;

(2) The respondent has been determined by or pursuant to law to be the parent; or

(3) There is other clear and convincing evidence that the respondent is the child's parent.

> (c) Upon finding, after notice and opportunity to be heard, that an obligor owes a duty of support, the tribunal shall issue a support order directed to the obligor and may issue other orders pursuant to section 576B–305.

This language is clear and unambiguous. If a support order does not already exist, HRS § 576B–401(a), the provisions of HRS § 576B–401(b) allow the responding tribunal of this State to order the respondent to pay temporary child support if there is sufficient indication, as defined by the statute, that the respondent is indeed the child's parent. Section 576B–401(b) is remedial—and not limiting, as Ng would have it—pending the issuance of a final support order pursuant to HRS § 576B–305.

In turn, HRS § 576B–305(b) provides:

> **Duties and powers of responding tribunal** . . . .
>
> (b) A responding tribunal of this State, to the extent otherwise authorized by law, may do one or more of the following:
>
> (1) Issue or enforce a support order, modify a child support order, or render a judgment to determine parentage;
>
> (2) Order an obligor to comply with a child support order, specifying the amount and the manner of compliance;
>
> (3) Order income withholding;
>
> (4) Determine the amount of any arrearages, and specify a method of payment;
>
> (5) Enforce orders by civil or criminal contempt, or both;
>
> (6) Set aside property for satisfaction of the support order;
>
> (7) Place liens and order execution on the obligor's property;
>
> (8) Order an obligor to keep the tribunal informed of the obligor's current residential address, telephone number, em-

ployer, address of employment, and telephone number at the place of employment;

(9) Issue a bench warrant for an obligor who has failed after proper notice to appear at a hearing ordered by the tribunal and enter the bench warrant in any local and state computer systems for criminal warrants;

(10) Order the obligor to seek appropriate employment by specified methods;

(11) Award reasonable attorney's fees and other fees and costs; and

(12) Grant any other available remedy.

"Support order" is defined in the IFSA as "a judgment, decree or order, whether temporary, final, or subject to modification, for the benefit of a child, a spouse, or a former spouse, which provides for monetary support; health care, arrearages, or reimbursement, and may include related costs and fees, interest, income withholding, attorney's fees, and other relief." HRS § 576B–101. It is obvious from the foregoing statutory language that the IFSA allows the responding tribunal to grant many other kinds of relief, not just child support from the date of filing of the petition.

The IFSA does not itself specify the exact circumstances in which a Hawai'i responding tribunal may grant statutorily available relief to the petitioner. HRS § 576B–303 (Supp. 2000) makes it clear that in an IFSA proceeding, a responding tribunal of this State must apply the law "generally applicable to similar proceedings originating in this State":

Application of law of State. Except as otherwise provided by this chapter, a responding tribunal of this State:

(1) Shall apply the procedural and substantive law, including the rules on choice of law, generally applicable to similar proceedings originating in this State and may exercise all powers and provide all remedies available in those proceedings; and

(2) Shall determine the duty of support and the amount payable in accordance with the law and support guidelines of this State.

The Official Comment of the Commissioners on Uniform State Laws upon the corresponding section of the Uniform Interstate Family Support Act[4] confirms that the IFSA does not restrict the relief available to an interstate petitioner. Quite the contrary. The Uniform Interstate Family Support Act (UIFSA) is an interstate lattice upon which the petitioner may invoke from afar the full panoply of relief made available by the law of the responding State:

Historically states have insisted that forum law be applied to support cases whenever possible. This continues as a key principle of UIFSA. In general, a responding tribunal has the same powers in an action involving interstate parties as it has in an intrastate case. This inevitably means that the Act is not self-contained; rather, it is supplemented by the forum's statutes and procedures governing support orders. To insure the efficient processing of the huge number of interstate support cases, it is vital that decision-makers apply familiar rules of local law to the maximum degree possible.

Official Comment to Unif. Interstate Family Support Act § 303, 9 U.L.A. 303 (1996). *See also Rauch*, 94 Hawai'i at 322, 13 P.3d at 331 ("This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning." (Block quote format, brackets, citation, ellipsis and internal quotation marks omitted)). *Cf. State of Washington ex rel. Gibson v. Gibson*, 8 Haw.App. 304, 310, 800 P.2d 1011, 1014 (1990) (the Hawai'i Uniform Reciprocal Enforcement of Support Act, HRS chapter 576 (1993) (repealed by 1997 Haw. Sess. L. Act 295, § 5 at 702), the predecessor statute to the IFSA, "simply provides a means for enforcing a duty of support as that duty may exist under the law of the responding state" (citation and internal quotation marks omitted)).

In this case, the Uniform Parentage Act, codified as HRS chapter 584 (1993 & Supp.

---

4. The wording of Hawai'i Revised Statutes § 576B–303 is virtually identical to that of section 303 of the Uniform Interstate Family Support Act. *See* Unif. Interstate Family Support Act § 303, 9 U.L.A. 303 (1996).

2000), is the Hawai'i law in "similar proceedings originating in this State[.]" HRS § 576B–303(1). Section 584–15 (Supp.2000) thereof provides, in pertinent part:

**Judgment or order. . . .**

(c) The judgment or order may contain any other provision directed against the appropriate party to the proceeding, concerning the duty of support, the custody and guardianship of the child, visitation privileges with the child, the furnishing of bond or other security for the payment of the judgment, or any other matter in the best interest of the child. Upon neglect or refusal to give this security, or upon default of the father or the father's surety in compliance with the terms of the judgment, the court may order the forfeiture of any such security and the application of the proceeds thereof toward the payment of any sums due under the terms of the judgment and may also sequester the father's personal estate, and the rents and profits of the father's real estate, and may appoint a receiver thereof, and may cause the father's personal estate, including any salaries, wages, commissions, or other moneys owed to him and the rents and profits of his real estate, to be applied toward the meeting of the terms of the judgment, to the extent that the court, from time to time, deems just and reasonable. The judgment or order may direct the father to pay the reasonable expenses of the mother's pregnancy and confinement, including but not limited to medical insurance premiums, such as for Med-Quest, which cover the periods of pregnancy, childbirth, and confinement. The court may further order the noncustodial parent to reimburse the custodial parent, the child, or any public agency for reasonable expenses incurred prior to entry of judgment, including support, maintenance, education, and funeral expenses expended for the benefit of the child.

(d) Support judgment or orders ordinarily shall be for periodic payments which may vary in amount. In the best interest of the child, a lump sum payment or the purchase of an annuity may be ordered in lieu of periodic payments of support. The court may limit the father's liability for past support of the child to the proportion of the expenses already incurred that the court deems just.

Hence, the IFSA, subsuming as it does the foregoing extensive relief afforded by Hawai'i law in paternity and support proceedings originating in this State, authorized the family court to award Pardella relief far in excess of that conceived of under Ng's selective interpretation of the UIFSA. For our purposes, it is enough to say that the prepetition support awarded by the court in this case was well within the powers afforded the court by the IFSA. *Cf. Gibson*, 8 Haw.App. at 312, 800 P.2d at 1015 ("We conclude that the plain language of [the Hawai'i Uniform Reciprocal Enforcement of Support Act, HRS chapter 576 (1993) (repealed by 1997 Haw. Sess. L. Act 295, § 5 at 702), the predecessor statute to the IFSA,] authorizes Hawaii, when it is the responding state, to deal with all aspects of the defendant's duty of child support including, but not limited to, the duty to pay arrearages.") Ng's first contention has no merit.[5]

B. *The Family Court Did Not Abuse its Discretion in Applying HFCR Rule 15(b) in this IFSA Action.*

Ng next argues that HFCR Rule 15(b) was not applicable in this IFSA case and therefore could not empower the family court to amend Pardella's petition to include a specific

---

5. In a one-sentence argument, Ng cites *Nabarrete v. Nabarrete*, 86 Hawai'i 368, 949 P.2d 208 (App. 1997), for the proposition that "child support is established from the date of the filing of the motion." Opening Brief at 12. *Nabarrete* is distinguishable from the present case. *Nabarrete* was not an IFSA case. *Nabarrete* involved the modification of a divorce decree, in which the family court awarded child support to the mother, but ordered the effective date of the award to be some three months after the filing date of the petition. *Nabarrete*, 86 Hawai'i at 369–70, 949 P.2d at 209–10. On appeal, the mother argued that the family court erred in not making the award of child support retroactive to the filing date of the petition. On this issue, we stated only that "[i]n the absence of any stated or apparent reason for this delayed inception, we agree." *Nabarrete*, 86 Hawai'i at 370, 949 P.2d at 210. Mother did not request pre-petition support, nor did this court rule on that issue.

prayer for pre-petition support. Ng explains that because Pardella failed to check off the box on her petition to request support for a prior period, that request was not verified and the court had no jurisdiction to consider, let alone award, pre-petition support:

> When the petition was filed, there was only one issue, that being the establishment of child support. [HRS § ] 576B–311(a) states that a petitioner must verify the petition, and provide certification of any support order in effect. Under [the IFSA], without the required verification and certification, the court has no jurisdiction to decide other issues.
>
> [HRS § ] 576B–311(b) clearly states that the petition must specify the relief sought. The lower court judge is bound by the jurisdictional requirements to hear only what is petitioned.
>
> The lower court['s] reliance on Rule 15(b) of the Hawaii Family Court Rules is in error as [HFCR] Rule 15(b) cannot amend the statutory jurisdictional limitations of [HRS § ] 576–311(a), that the issues before the court must first be verified and certification provided. Under [the IFSA], without the requirements first being met, the court has no jurisdiction to decide other issues and the Family Court Rule does not come to bear.

Opening Brief at 13 (parenthetical omitted).

For these arguments, Ng relies upon HRS § 576B–311 (Supp.2000):

> **Pleadings and accompanying documents.** (a) A petitioner seeking to establish or modify a support order or to determine parentage in a proceeding under this chapter must verify the petition. Unless otherwise ordered under section 576B–312, the petition or accompanying documents must provide, so far as is known, the name, residential address, and social security numbers of the obligor and the obligee, and the name, sex, residential address, social security number, and date of birth of each child for whom support is sought. The petition must be accompanied by a certified copy of any support order in effect. The petition may include any other information that may assist in locating or identifying the respondent.

> (b) The petition must specify the relief sought. The petition and accompanying documents must conform substantially with the requirements imposed by the forms mandated by federal law for use in cases filed by a support enforcement agency.

■■■ We first hasten to point out that any argument based upon the requirement of certification is misplaced in this case because there was no "support order in effect" at the time Pardella's petition was filed. HRS § 576B–311(a) ("The petition must be accompanied by a certified copy of any support order in effect."). We also reject the argument that the alleged lack of verification of Pardella's prayer for pre-petition support deprived the family court of jurisdiction over that request. In a case presenting a similar issue, we held, "Facts, not prayers, need verification." *Gibson*, 8 Haw.App. at 315, 800 P.2d at 1016. That leaves only one colorable argument on this issue:

> [HRS § ] 576B–311(b) clearly states that the petition must specify the relief sought. The lower court judge is bound by the jurisdictional requirements to hear only what is petitioned.

Opening Brief at 13.

■■ With respect to this argument, we first reject the implication that the petitioner's prayer determines and delimits the subject matter jurisdiction of the responding tribunal. As we have discussed, it is the IFSA that is the jurisdictional vehicle for the interstate petitioner. We next observe, accordingly, that the IFSA subsumes HRCP Rule 15(b). HRS § 576B–303(1) ("a responding tribunal of this State ... [s]hall apply the procedural and substantive law, ... generally applicable to similar proceedings originating in this State and may exercise all powers and provide all remedies available in those proceedings"). HFCR Rule 15(b) provides:

> **Amendments to Conform to the Evidence.** When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the

pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

The purpose of HFCR Rule 15(b) is

to allow an amendment of the pleadings to bring the pleadings in line with the actual issues upon which the case was tried, and to thus promote the objective of deciding cases on their merits rather than in terms of the relative pleading skills of counsel or on the basis of a statement of the claim or defense that was made at a preliminary point in the action and later proves to be erroneous.

*Cresencia v. Kim,* 10 Haw.App. 461, 477, 878 P.2d 725, 734 (App.1994) (brackets, citations and internal quotation marks omitted.)

To be clear about which provision of HFCR Rule 15(b) we are talking about here, we note that this is not a case in which "evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings[.]" *Id.* The first time Ng objected to an award of pre-petition support was in his mid-trial July 15, 1999 trial memorandum, and that only on the basis that the IFSA, *per se,* does not permit such an award. It was not until closing argument on the final trial day, July 16, 1999, that Ng grounded his opposition to an award of pre-petition support upon Pardella's failure to include a specific prayer therefor in her petition. This is, instead, very much a case in which "issues not raised by the pleadings are tried by express or implied consent of the parties," such that "they shall be treated in all re-

spects as if they had been raised in the pleadings." *Id.*

■ Under HRCP Rule 15(b), consent will be implied where a party either fails to object to the introduction of evidence on the unpleaded issue or actually produces or elicits evidence bearing on the issue.

In this jurisdiction, consent will be implied from the failure to object to the introduction of evidence relevant to the unpleaded issue. In the present case, there was no objection to the introduction of evidence relevant to the unpleaded defense of qualified privilege. In fact, the appellee himself introduced such evidence as part of his case. We find that implied consent to the trial of the unpleaded issue of qualified privilege did exist.

*Hamm,* 61 Haw. at 473, 605 P.2d at 501–02 (citations and footnote omitted). *See also Cresencia,* 10 Haw.App. at 478, 878 P.2d at 734.

This was exactly the case below. At the start of trial on June 16, 1999, and again at the outset of the concluding trial day of July 16, 1999, Ng stipulated into evidence CSEA's exhibits that contained financial information about both parties for the years 1989 to 1999. Ng elicited testimony from Pardella regarding her income during those years. In response to questions from his own attorney, Ng testified as to his employment and income during the same period. Counsel for CSEA cross-examined Ng on those matters. At no time during the trial did Ng object to the introduction of evidence of the parties' financial information for periods before the filing of the petition.

■ Moreover, under HRCP Rule 15(b), "[e]xpress consent may be found in a stipulation, or may be incorporated in a pretrial order." *Cresencia,* 10 Haw.App. at 478, 878 P.2d at 734 (citations omitted.)

Here, there were two stipulations between the parties at trial—one on June 16, 1999 and one on July 16, 1999—that CSEA exhibits containing financial information about the parties for the period from 1989 to 1999 would be entered into evidence. Though these were not, in so many words, stipulations that the unpleaded issue of child sup-

port for that period could be tried, they were the functional equivalent. As quoted above, Ng's counsel made it explicit that in entering the second stipulation, Ng was, for the most part, conceding the facts on the issue of pre-petition support in order to concentrate on opposing the issue on the law.

Here, also, there were two pretrial orders and one mid-trial order specifying current child support and retrospective child support as the only issues for trial. Although, again, these were not direct declarations that the issue of pre-petition support would be tried with the consent of the parties, Ng made no objection to any of the orders despite ample notice so to do, and in fact vociferously collaborated in framing the issues at the latter two corresponding hearings.

We acknowledge that "a party's failure to object will not constitute implied consent unless the party had notice that evidence was being introduced to prove the unpleaded issue." *Id.* at 478, 878 P.2d at 734 (citations omitted).

In this case, however, there was ample notice, both before and during trial, that the issue of pre-petition support would be tried and was being tried, as the case may be. As we have detailed above, notice came in various ways—through discussions at pretrial hearings and at trial, through stipulations regarding evidence relating to the issue of pre-petition support, and through the resulting pretrial and mid-trial orders. Indeed, Ng was an active participant in framing the issue for trial, in incorporating it into the various stipulations and in presenting evidence on it at trial. The record is replete with notice that pre-petition support would be an issue for trial. And the record indubitably establishes that Ng well knew it.

We also acknowledge that "consent will not be implied if a party will be substantially prejudiced by such an amendment." *Id.* But this issue need not detain us, because it should be clear at this juncture that Ng was well aware that pre-petition support would be an issue at trial, and was well prepared to meet it. By the same token, even assuming, *arguendo*, that Ng's trial memorandum or his closing argument at trial constituted an objection to evidence "at the trial on the ground that it is not within the issues made by the pleadings," HFCR Rule 15(b), the family court would have been well within its discretion to "allow the pleadings to be amended" to include the issue of pre-petition support, and that it would have been incumbent upon the court to "do so freely when[,]" as here, "the presentation of the merits of the action will be subserved thereby and the objecting part fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits." *Id.*

"Rule 15(b) [HRCP] is not permissive in terms: it provides that issues tried by express or implied consent *shall* be treated as if raised in pleadings." *Hamm*, 61 Haw. at 474, 605 P.2d at 502 (citation and internal quotation marks omitted; emphasis in the original). Hence, had the family court done other than what it did here, it would have abused its discretion. As it is, it did not.

## IV. Conclusion.

The family court's Order is affirmed.