53 P.3d 296

**Celeste L. MATSUNAGA, Plaintiff–Appellant,**

v.

**Joel K. MATSUNAGA, Defendant–Appellee.**

**No. 24092.**

Intermediate Court of Appeals of Hawai'i.

July 17, 2002.

Judith A. Schevtchuk and Margaret Jenkins Leong, Honolulu, on the briefs, for Plaintiff–Appellant.

Robert M. Harris, Honolulu, on the briefs, for Defendant–Appellee.

BURNS, C.J., LIM and FOLEY, JJ.

Opinion of the Court by Burns, C.J.

Plaintiff–Appellant Celeste L. Matsunaga (Mother or Plaintiff) appeals from the following orders entered in the Family Court of the First Circuit: (a) November 20, 2000 "Order Re: Plaintiff's Motion and Affidavit for Post–Decree Relief Filed on March 8, 2000" (November 20, 2000 Order) and (b) January 19, 2001 "Order Denying Plaintiff's Motion for Reconsideration of Order Re: Plaintiff's Motion and Affidavit for Post–Decree Relief Filed on November 20, 2000" (January 19, 2001 Order).[1] Specifically, Mother challenges (1) various findings of fact; (2) the finding, in Conclusion of Law No. 2, of the amount of the monthly income of Defendant–Appellee Joel K. Matsunaga (Father or Defendant); (3) the decision, in Conclusions of Law Nos. 7, 8, 9, 10, 11, 14, and 15, ordering a downward deviation from the amount calculated pursuant to the 1998 Child Support Guidelines; and (4) the decision, in Conclusion of Law No. 24, "that the higher educational provision of the parties' 1988 Divorce Decree should be re-affirmed and enforced" and similar decisions in Conclusions of Law Nos. 22 and 23. We affirm in part, reverse in part, vacate in part, and remand.

## BACKGROUND

Mother and Father were married in Honolulu, Hawai'i, in October 1979. They have

---

1. Per diem District Family Judge Christine E. Kuriyama presided in this case.

two children (Daughter 1 and Daughter 2, or, collectively, First Children). Daughter 1 was born on March 29, 1982, and Daughter 2 was born on September 21, 1983. Mother and Father were divorced by a Decree Granting Absolute Divorce (Divorce Decree) entered on March 11, 1988. At the time of the divorce, Mother was earning approximately $36,000 per year working as a controller for Pineapple Hawai'i, a company that operated pineapple stands and restaurants on the islands of O'ahu and Maui. At the time of the divorce, Father was earning approximately $45,000 to $50,000 per year working at GTE Hawaiian Telephone (now known as Verizon Hawaii).

The Divorce Decree awarded Father and Mother joint legal custody of First Children. It awarded Mother physical custody of, and Father liberal visitation of, First Children. As to First Children, it ordered (1) Father to pay Mother total child support of $820 per month, which was the amount calculated pursuant to the Hawai'i Child Support Guidelines then in effect; and (2)(a) Father to maintain medical and dental insurance coverage for First Children, (b) Mother to pay for all uninsured routine medical and dental expenses, and (c) Father and Mother each to pay one-half of all uninsured extra-ordinary medical and dental expenses. The Divorce Decree also contained the following provision regarding post-secondary education:

> Should [First Children] continue their education post-high school on a full-time basis at an accredited college or university, or in a vocational or trade school, [Mother] and [Father] shall each assume and pay a proportionate share of the higher education expenses, based on the percentage their net income bears to the total net income of the parties. Net income shall mean gross wages less federal and state taxes, FICA and mandatory deductions. Such education expenses shall include but not be limited to tuition, fees and book expense at an amount no greater than the then current tuition, fees and book expenses at the University of Hawaii, Manoa. [Mother] and [Father] shall each continue to pay their proportionate share of the higher education expenses for each child until said child's graduation with a Bachelor's degree

or attainment of the age of 23 years, whichever event shall first occur. This provision shall be subject to further order of the Court.

In August of 1988, Mother and First Children relocated to Bellevue, Washington. Mother formed a partnership and began operating "ForYu Furnishings," a consignment store. Mother and her business partner have been operating the store for the past 11 years.

In December 1988, Father married his current wife (Stepmother). Father and Stepmother have two daughters (Daughter 3 and Daughter 4, or, collectively, Second Children) from this marriage. At the time of trial on July 14, 2000, Daughter 3 was aged ten, and Daughter 4 was aged nine. Second Children attend Nu'uanu Elementary School, a public school. Father testified, "We live in Kaneohe, but we have them on a district exemption to go into Nuuanu." In 1999, Stepmother's gross income was $74,708.52.

First Children attended a small public school in Bellevue, Washington. At Father's expense, they visited Father in Hawai'i during their Christmas and summer vacations. During the period from 1988 through 1999, Mother did not ask Father or the family court to increase the child support payable by Father. Mother testified that lack of finances caused her to deny First Children's opportunities to participate in class trips and some activities. On occasion, First Children would ask Father to pay one-half of an expense. For example, Father contributed $4,000 toward the purchase of a car for Daughter 1, and the car cost a total of approximately $7,500.

Mother testified that when Daughter 1 was choosing which college/university to attend, she decided she wanted to remain in Washington but did not want to go to the University of Washington because she "does not like to be in a school with a large enrollment." Daughter 1 eventually selected the University of Puget Sound, a private college.

On March 8, 2000, Mother filed a Motion and Affidavit for Post–Decree Relief (March 8, 2000 Motion), seeking to modify the provisions of the Divorce Decree concerning child

support, child health care expenses, and child educational expenses. In Plaintiff's Position Statement filed on July 14, 2000, Mother sought an order requiring (1) Father to pay child support of $3,060 per month; (2) Mother to pay the first $250 per child per year of uninsured medical and dental expenses, and Father and Mother to pay in proportion to their respective incomes all other child medical and dental expenses; (3) Father and Mother to pay in proportion to their respective incomes for all post-high school educational expenses incurred by First Children; and (4) Father to reimburse Mother the fees and costs incurred by Mother in this matter.

At the time of the family court's July 14, 2000 hearing, Mother was working at the consignment store and was receiving $2,000 per month. Father was employed by Verizon Hawaii, and his annual base pay was $4,350 X 26 equals $113,100. The total of the bonus he was paid in 1998, plus the bonus he was paid in 1999, was $42,483.36.[2] The annual average of these two bonuses was $21,241.68. Thus, Father indicated on his May 17, 2000 Income and Expense Statement that his monthly gross income was $11,195.14 ($113,100 plus $21,241.68 equals $134,341.68 divided by 12 equals $11,195.14). Father testified that when averaging the bonuses, he did not include the $43,400 bonus he received in March 2000 because, due to the merger of Bell Atlantic and GTE to form Verizon, the year 2000 bonus was unusually high. Father also did not include the $365.58 nontaxable value of fringe benefits (such as medical, dental, unemployment insurance, disability insurance, and workers' compensation insurance) he received from his employer every two weeks.

The family court's November 20, 2000 Order states, in relevant part, as follows:

1. *CHILD SUPPORT:* For purposes of recalculating child support, and in light of the credible, competent evidence before the Court, the Court finds that Mother's gross monthly income from all sources is $2,000.00 and that Father's gross monthly income from all sources is $11,195.14. Ap-

plying the Hawaii Child Support Guidelines to these gross monthly incomes results in Father's child support obligation of . . . a total of $2,330.00 per month, . . . . However, based upon the testimony, argument and exhibits advanced at trial, the Court deviates from the Guidelines and commencing March 15, 2000, Father shall pay to Mother as and for child support . . . a total of $1,720.00 per month based on the reasonable needs of the minors as reflected by Mother's Income and Expense Statement dated February 19, 2000 and appended to Mother's motion.

. . . .

2. *CHILDREN'S HEALTH CARE:* Pursuant to . . . the [Divorce Decree], Father shall be responsible for maintaining medical and dental insurance coverage for the parties' two (2) children. . . . The Court hereby re-affirms and enforces the remaining provisions . . . of the [Divorce Decree] with respect to uninsured "routine" and "extraordinary" medical and dental expenses for the children, to wit:

Mother shall pay all uninsured routine medical and dental expenses for the children. Mother and Father shall pay equal shares of extraordinary medical and dental expenses including but not limited to hospitalization and orthodontia. This obligation with regard to the children's medical and dental expenses shall continue for so long as the parties or either of them is obligated to provide child support and/or educational support for a child of the parties, or until further order of the Court.

. . . .

3. *POST–HIGH SCHOOL EDUCATIONAL EXPENSES:* . . . .

The Court finds that the higher educational provision of the parties' 1988 [Divorce Decree] should be re-affirmed and enforced inasmuch as the terms of this provision of their decree were negotiated by the parties, both of whom were represented by counsel at the time of their divorce, as part of the Agreement Incident

---

**2.** Also in 1998, Defendant–Appellee Joel Matsunaga played in a charity golf tournament, made a hole-in-one, and won a car. For his receipt of the car, he paid taxes on an additional income of $33,375.00.

To Divorce filed with the Court on February 23, 1988 and specifically incorporated into the [Divorce Decree].

   4. ***ATTORNEY'S FEES:*** Mother is awarded reasonable attorney's fees and costs in relation to her post-decree motion, the exact amount of which shall be determined[.] [3]

(Footnote added.)

On November 30, 2000, Mother filed "Plaintiff's Motion for Reconsideration of Order Re: Plaintiff's Motion and Affidavit for Post Decree Relief Filed on November 20, 2000" arguing that: (1) the family court violated Hawai'i's 1998 Amended Child Support Guidelines (1998 ACSG) by failing to include in the child support recalculation the $43,400 bonus Father received in March 2000; (2) the family court violated (a) the 1998 ACSG, (b) *Richardson v. Richardson,* 8 Haw.App. 446, 808 P.2d 1279 (1991), and (c) Hawaii Revised Statutes (HRS) § 584–15(e) (2000) by its downward deviation from the guidelines amount in determining the appropriate level of child support; (3) the combination of (1) and (2) above constitutes a violation of HRS § 576D–7(b)(3)(2001),[4] is fundamentally unfair to First Children, and is an abuse of discretion; and (4) the family court failed to correctly apply HRS § 580–47 (2001) by apparently determining that the provisions in the parties' Divorce Decree as to First Children's college education constituted a contract which could not be modified after a change of circumstances.

On January 19, 2001, the family court entered its "Order Denying Plaintiff's Motion for Reconsideration of Order Re: Plaintiff's Motion and Affidavit for Post Decree Relief Filed on November 20, 2000."

---

3. Finding of Fact No. 25 of the Findings of Fact and Conclusions of Law filed on April 18, 2001, state that "Plaintiff–Mother is awarded ... $3,764.64 (i.e., $3,465.00 for reasonable attorneys fees and $299.64 for reasonable costs.)"

4. Hawaii Revised Statutes § 576D–7(b) (1993) states, in relevant part, as follows: "The guidelines shall be: ... (3) Applied to ensure, at a minimum, that the child for whom support is sought benefits from the income and resources of the obligor parent on an equitable basis in comparison with any other minor child of the obligor

On February 20, 2001, Mother filed a notice of appeal. On April 18, 2001, the family court entered its Findings of Fact and Conclusions of Law (FsOF and CsOL).

## STANDARDS OF REVIEW

Findings of fact are reviewed under the clearly erroneous standard. *Child Support Enforcement Agency v. Carlin,* 96 Hawai'i 373, 378–79, 31 P.3d 230, 235–36 (App.2001). A finding of fact is clearly erroneous if: (1) the record lacks substantial evidence to support the finding; or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with the definite and firm conviction that a mistake has been made. *Id.*

   We review the trial court's [conclusions of law] de novo under the right/wrong standard. *Raines v. State,* 79 Hawai'i 219, 222, 900 P.2d 1286, 1289 (1995). "Under this ... standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it." *State v. Miller,* 4 Haw.App. 603, 606, 671 P.2d 1037, 1040 (1983). *See also Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 119, 839 P.2d 10, 28, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992). Thus, a [conclusion of law] "is not binding upon the appellate court and is freely reviewable for its correctness." *State v. Bowe,* 77 Hawai'i 51, 53, 881 P.2d 538, 540 (1994) (citation omitted).

*Chun v. Board of Trustees of Employees' Retirement Sys.,* 92 Hawai'i 432, 438–39, 992 P.2d 127, 133–34 (2000). A conclusion of law which is supported by the trial court's findings of fact which reflects an application of the correct rule of law will not be overturned. *Nani Koolau Company v. K & M Construc-*

parent[.]" The words "equitable basis" do not mean "equal basis." The law seeks to treat equal children equally. It does not seek to treat unequal children equally. For example, when considering whether to order a parent to contribute to the cost of a child's attendance at a college, university or vocational school, the law recognizes that all children are not equal in terms of qualification, aptitude, desire, commitment, compatibility with the institution, and reasonable need.

*tion Inc.*, 5 Haw.App. 137, 141, 681 P.2d 580, 585 (1984).

## DISCUSSION

### A.

Mother challenges various FsOF. Upon a review of the record, we affirm each of them except a part of FOF No. 36. It states that "[Mother] did not consult with [Father] before determining whether or not to send [Daughter 1], to the University of Washington (instead of the University of Puget Sound)." The word "send" is misleading. The evidence is that Mother and Daughter 1 agreed that Daughter 1 would go to college/university at the University of Puget Sound.

### B.

Mother challenges the following FsOF that are mislabeled as CsOL:

2. In light of the credible, competent evidence before the Court, the Court finds that ... [Father's] gross monthly income from all sources is $11,195.14.

3. The Court accepts as credible and reasonable [Father's] explanation regarding the calculations and analysis used by him to determine his gross monthly income of $11,195.14, as advanced by his financial statements on file at the time of trial.

4. The Court accepts as credible and reasonable [Father's] explanation that the bonuses received by him prior to trial were not regularly received bonuses (either in terms of amounts paid or number of times paid).

5. [Father's] bonuses received by him prior to trial were one time bonuses considered rare and not ordinary, having been generated primarily by one-time a rare events like corporate mergers and other rare department assignments and duties.

■ The record does not support Mother's argument that the family court was wrong in not including in Father's income the $365.58 value of fringe benefits received by Father every two weeks from his employer. Section II.D.16 of the 1998 ACSG includes within "gross income" all "[f]ringe benefits ...

which reduce personal living expenses." Thus, to be included, the fringe benefit must be of something that Father reasonably would be expected to pay for if it was not paid for by his employer. The record shows that this $365.58 is for "SKBD Choices— Benefits." More specifically, it shows that this $365.58 is for nontaxable fringe benefits (such as medical, dental, unemployment insurance, disability insurance, and workers' compensation insurance) from his employer. There is no evidence that all of these are items that Father reasonably would be expected to pay for if not paid for by his employer. Obviously, a part of the $365.58 is for items that Father reasonably would be expected to pay for if it was not paid for by his employer, but there is no evidence of what part. Absent this relevant and material finding, the family court was not authorized to include in Father's income any of the $365.58 value of fringe benefits received by Father every two weeks from his employer.

■ Section II.D.1 of the 1998 ACSG includes within "gross income" the "income from all sources that are regular and consistent, including but not limited to: .... bonuses[.]" Contrary to COL No. 4, Father's receipt of a bonus was regular and consistent. Father argued, and the family court agreed, that it should not consider the $43,400 bonus received by Father in March 2000 because it was unusually high. The record indicates that the 1998 and 1999 bonuses were not of similar amounts. The fact that Father averaged the 1998 and 1999 bonuses indicates that the amounts of his bonuses were not consistent. Father having averaged his 1998 and 1999 bonuses, we conclude that the family court erred when it did not average Father's 1998, 1999, and 2000 bonuses.

### C.

■ FOF No. 35 states as follows: "Enrollment at the University of Washington would have permitted for 'in-state' tuition and no need for the expenditure of additional monies for [Daughter 1's] room and board."

Mother testified that Daughter 1 did not want to attend the University of Washington

because Daughter 1 "does not like to be in a school with a large enrollment." Mother sought for an order requiring Mother and Father to pay in proportion to their incomes for Daughter 1's tuition, books, and fees at the University of Puget Sound. Mother estimated that the total cost of room, board, tuition, fees, books, and transportation would be $30,695 per year. Mother testified that for "scholarships, grants and loans and work study, the total aid is twenty-five thousand five hundred forty dollars." Mother asked that Father be ordered "to pay 89% of approximately $5–10,000 or $4,450–$8,900" (footnote omitted) depending on the financial aid received. In Mother's words, "if I had to pay a little bit more for her to go to the school of her choice, I would much rather do that[.]"

Father testified, in relevant part, as follows:

Q. Do you find it difficult for you to have to tell the Court that you can't afford the school that your daughter wants to go to?

A. Yes. And—and it's very difficult, because I want to do what [Daughter 1] or [Daughter 2] or—or my other two kids, [Daughter 3] and [Daughter 4] would like to do. But it's the balancing of everybody. And I'm very concerned on what providing for one could do in terms of the ability to provide for all four. And that's why it's difficult.

The FsOF state, in relevant part, as follows:

7. The parties, with counsel, were able to successfully negotiate an uncontested resolution to their divorce.

. . . .

9. The parties each attended public schools in the State of Hawaii, through high school, and thereafter graduated from the University of Hawaii, Manoa. Each party considered the education (s)he received at this public institution of higher learning to have been appropriate, sufficient and a good value for the monies charged.

10. Paragraph (6) of the 1998 Divorce Decree, regarding higher education expenses, was specifically negotiated in the manner it was because of the parties' position, concerns and opinions regarding: a) the value of a public school education in the State of Hawaii, to include a public higher education at the University of Hawaii, Manoa, and; b) the need to reasonably and realistically contain the costs to the parties' of their children's higher education, especially given that at the time the parties were divorced in March, 1988, it would be several years before either of their two (2) (then) minor children would enter institutions of higher learning.

Mother challenges the following CsOL:

22. The Court re-affirms Section (6) of the Divorce Decree, at page 4, regarding the parties' responsibility for Post High School educational expenses.

23. The parties shall be responsible for payment of their proportionate share of the higher educational expenses incurred by the children, based on the percentages their respective net incomes bear to the total net income of the parties, subject to the limitation that such educational expenses (defined under Section (6) of the Divorce Decree as tuition, fees and book expenses), shall be set at an amount no greater [than] the then-current tuition, fees and book expenses at the University of Hawaii, Manoa Campus.

24. The Court further finds that the higher educational provision of the parties' 1988 Divorce Decree should be re-affirmed and enforced in as much as the terms of this provision of their Divorce Decree were negotiated by the parties, both of whom were represented by Counsel at the time of their divorce, as part of the Agreement Incident to Divorce filed with the Court on February 23, 1988 and specifically incorporated into the Divorce Decree.

Plainly stated, the family court decided that the higher educational provision of the parties' 1988 Agreement Incident to Divorce, which was specifically incorporated into the Divorce Decree, should be re-affirmed and enforced because it was the counseled agreement of the parties. In doing so, the family court erred. The higher educational provision expressly states that

"[t]his provision shall be subject to further order of the Court." Moreover, "[a] property settlement agreement incorporated into a decree of divorce loses its separate existence and becomes part of the decree." *Wallace v. Wallace*, 1 Haw.App. 315, 315, 619 P.2d 511, 511 (1980). Regarding divorce decrees, HRS § 580–47 (2001) states, in relevant part, as follows:

(a) ... Provision may be made for the support, maintenance, and education of an adult or minor child and for the support, maintenance, and education of an incompetent adult child whether or not the petition is made before or after the child has attained the age of majority. In those cases where child support payments are to continue due to the adult child's pursuance of education, the agency, three months prior to the adult child's nineteenth birthday, shall send notice by regular mail to the adult child and the custodial parent that prospective child support will be suspended unless proof is provided by the custodial parent or adult child to the child support enforcement agency, prior to the child's nineteenth birthday, that the child is presently enrolled as a full-time student in school or has been accepted into and plans to attend as a full-time student for the next semester a post-high school university, college, or vocational school. If the custodial parent or adult child fails to do so, prospective child support payments may be automatically suspended by the child support enforcement agency, hearings officer, or court upon the child reaching the age of nineteen years. In addition, if applicable, the agency, hearings officer, or court may issue an order terminating existing assignments against the responsible parent's income and income assignment orders.

. . . .

(c) No order entered under the authority of subsection (a) or entered thereafter revising so much of such an order as provides for the support, maintenance, and education of the children of the parties shall impair the power of the court from time to time to revise its orders providing for the support, maintenance, and education of the children of the parties upon a showing of a change in the circumstances of either party or any child of the parties since the entry of any prior order relating to such support, maintenance, and education. The establishment of the guidelines or the adoption of any modifications made to the guidelines set forth in section 576D–7 may constitute a change in circumstances sufficient to permit review of the support order. A material change of circumstances will be presumed if support as calculated pursuant to the guidelines is either ten per cent greater or less than the support amount in the outstanding support order. The need to provide for the child's health care needs through health insurance or other means shall be a basis for petitioning for a modification of the support order. The most current guidelines shall be used to calculate the amount of the child support obligation.

Thus, while the child is a full-time student at a post-high school college, university, or vocational school, the guidelines continue to apply. The family court cannot determine whether an exceptional circumstance warrants a deviation from the applicable guideline amount until it determines where the child will be a full-time student and what the child's reasonable expenses will be. Therefore, the family court must decide, in light of all the relevant facts, at what post-high school college or colleges, university or universities, or vocational school or schools it is reasonable for Daughter 1 to be a full-time student. If the University of Puget Sound is included, Daughter 1's actual and reasonable expenses must be considered. If the University of Puget Sound is not included, Daughter 1's actual and reasonable expenses must be considered but no more than the actual and reasonable expenses Daughter 1 would incur if she was a full-time student at the most expensive of the listed institutions.

D.

With her March 8, 2000 Motion, Mother filed her February 19, 2000 Income and Expense Statement (February 19, 2000 I & ES) reporting her monthly income as follows:

| | |
|---|---|
| net pay | $1,681.36 |
| child support | 820.00 |
| net rent | 107.00 |
| medical/dental reimbursement | 120.00 [5] |
| TOTAL | $2,728.36 |

Mother's February 19, 2000 I & ES reported the following actual monthly expenses for Mother and First Children:

| | | | |
|---|---|---|---|
| Housing and Transportation | | | $2,410.98 |
| Debt Service | | | 400.00 |

| | Mother | First Children | |
|---|---|---|---|
| Food | $200 | $ 250 | 450.00 |
| Clothing | 53 | 175 | 227.00 |
| Medical and Dental | 130 | 212 | 342.00 |
| Laundry and Cleaning | 10 | 10 | 20.00 |
| Personal articles | 35 | 70 | 105.00 |
| Recreation | 45 | 80 | 125.00 |
| School (including food) | | 80 | 80.00 |
| Household | 55 | 50 | 105.00 |
| Sports for children | | 115 | 115.00 |
| TOTALS | $527 | $1,042 | $4,379.98 |

Mother reported "Housing and Transportation" expenses of "$2,410.98" per month. Father noted that a part of Mother's "Housing" expenses was attributable to real property in Hawai'i not used by First Children. He advised the family court that Mother's Washington mortgage was $615 per month and the utilities and related expenses were $403, the total sum of $1,018. It appears that the family court believed him. The record does not reveal the amount of the relevant "Transportation" expenses.[6] In other words, excluding "Transportation" expenses, Mother had an income of $2,728.36 and expenses of $2,587.

Mother challenges the following CsOL:

5. Mother testified, in relevant part, as follows:
   A. Fifty dollars of that hundred and twenty dollars is reimbursement that Joel gives to me because of an orthodontist bill that we have. And I had to pay a hundred dollars each month. And so we split it fifty/fifty, so he would reimburse me fifty dollars each month for that bill.
   And the seventy dollars balance is his reimbursement to me for half a share of the children's medical insurance premium.
   Conclusion of Law No. 19 states as follows:
   The parties' current arrangement whereby [Mother] pays for the children's medical insurance each month and [Father] then reimburses [Mother] for a portion of this expense is adopted as the Court's current order, but shall be and is amended to require [Father] to instead reimburse [Mother] for the entire cost of

7. Based upon the credible testimony, argument(s) and exhibits advanced at trial, the Court deviates for good cause from the Child Support Guidelines Worksheet, based upon appropriate exceptional circumstances, and orders that [Father] shall pay to [Mother] as and for the support of the parties' two (2) children the sum of $860.00 per month per child, for a total obligation of $1,720.00 per month.[7]

8. The Court determines that the reasonable needs of the parties' children is $1,720.00 per month based upon and as reflected by [Mother's] Income and Expense Statement dated February 19, 2000 and appended to [Mother's] Motion for Post–Decree Relief filed March 8, 2000, and rejects in part [Father's] argument that the children's reasonable personal needs are only $1,042.

9. The Court finds that the total sum of $1,720.00 per month will and does meet the children's reasonable needs, having been provided no credible evidence by either party at trial that the children have been or will be denied specific and necessary and basic needs as a consequence of this ruling.

10. The Court's decision to deviate from the child support as calculated by the Child Support Guidelines Worksheet is supported by the credible evidence and testimony adduced at trial in consideration of *Richardson v. Richardson,* 8 Haw.App. 446, 808 P.2d 1279 (1991). . . .

this insurance, in the current amount of $187.78 per month (or the then current amount), on a monthly basis on or before the first day of each month.

6. In her opening brief, Mother indicates that the "transportation expenses attributable to" her two daughters is $513 per month.

7. Two-thirds of the $1,018 expense for housing and utilities ($678.66) plus $1,042 equals $1,720.66. No provision is made for the expense of transportation. In her opening brief, Mother states that "[w]hen transportation expenses attributable to the girls are factored in to the amounts stated in [Mother's] statement, the expenses attributable to the girls total $2,232, not $1,720.00 as the Court claimed."

11. As indicated in the *Richardson* decision, "exceptional circumstances exist which warrant deviation from the [Child Support Guidelines]" if a party "has an unusually high monthly income that would result in a computation higher than the ·reasonable needs of the children". Such is the circumstances in this case.

12. In *Richardson*, ... the Hawaii Intermediate Court of Appeals states that "an award for child support is for the child's current needs based on the child's appropriate standard of living and not for the purposes of saving portions thereof for future needs."

. . . .

14. The monthly child support of $2,330.00, as calculated by the Child Support Guidelines Worksheet in this case, exceeds the children's reasonable needs which are determined to be $1,750.00 [sic] per month.

15. If the Court does not deviate based upon appropriate exceptional circumstances, as it has done in this case, then the additional monies of $580.00 per month would exceed the children's reasonable needs and be considered a payment to the minor children for something other than child support.

(Footnote added.)

The 1998 ACSG state that the court

may order child support which deviates (varies) from the Guidelines *only* if exceptional circumstances warrant such deviation, pursuant to HRS Sections 576D–7 and 576E–15. In such cases, the court or hearings officer shall make oral findings of fact on the record at the hearing or prepare written findings of fact regarding the exceptional circumstances.

In its November 20, 2000 Order, the family court stated, in relevant part, as follows:

However, based upon the testimony, argument and exhibits advanced at trial, the Court deviates from the Guidelines and commencing March 15, 2000, Father shall pay to Mother as and for child support for the parties' two (2) children, ... a total of $1,720.00 per month based on the reasonable needs of the minors as reflected by Mother's Income and Expense Statement dated February 19, 2000 and appended to Mother's motion.

In other words, the family court agreed with Father that Mother's February 19, 2000 I & ES, which she filed with her March 8, 2000 Motion and in which she stated her actual monthly income (actual monthly income plus $820 child support) and expenses at that time, stated the reasonable needs of First Children and, therefore, proved an exceptional circumstance.

■ Mother contends that the family court erred when it ordered a downward deviation from the amount calculated pursuant to the 1998 ACSG because the family court did not follow the requirements specified in *Richardson*. *Richardson* notes that a court may order child support which deviates from the applicable guidelines "only if exceptional circumstances warrant such deviation." 8 Haw. App. at 457, 808 P.2d at 1286. "An unusually high monthly income that would result in a computation higher than the reasonable needs of the children" is one "exceptional circumstance" warranting departure. *Id.* (citing *Doe VI v. Roe VI*, 6 Haw.App. 629, 736 P.2d 448 (1987)).

■ Mother argues that the court erroneously relied on her February 19, 2000 I & ES to determine the reasonable needs of First Children. Mother asserts that under *Richardson*, the determination of the appropriate standard of living must take into account the current financial situation of both parents. *Id.* Mother argues that her February 19, 2000 I & ES did not establish First Children's "appropriate standard of living" because the reported expenses were based on her income plus the $820 per month child support payments Father had been paying since 1988, and that $820 per month was not based on Father's current higher income.

We agree with Mother. Mother's actual expenses at the time she filed her motion for an increase of child support show the cost of the actual standard of living at the time of her application based on her income and the child support then being received. By itself, Mother's February 19, 2000 I & ES stating her actual income and expenses at that time

based on her income plus child support of $820 per month from Father and $70 for one-half of medical insurance for the children is not substantial evidence of the reasonable needs of the First Children at the appropriate standard of living.

Presumptively, the amount of child support necessary to fund the appropriate standard of living is the total amount computed according to Parts I, II, and III of the 1998 ACSG. Mother satisfied her burden of proving the amount payable in accordance with the 1998 ACSG. The family court found that Mother had proved a 1998 ACSG amount of at least $2,330 per month.

■ It is noted in *Richardson* that the payor's burden is as follows:

> In this situation the three questions of fact that must be answered are: (1) What is the appropriate standard of living? (2) What is the total cost of the children's reasonable needs at the appropriate standard of living? (3) If the answer to question (2) is less that the total amount computed according to Parts I and II of the ACSG,[8] then the case involves an exceptional circumstance.

(Footnote added.) *Id.* at 457, 808 P.2d at 1287 (footnote added). It is the burden of the party alleging the "exceptional circumstance" to prove that the amount of child support necessary to fund the appropriate standard of living is less than the total amount computed according to Parts I, II, and III of the 1998 ACSG and to prove how much less.[9] In this case, it is Father's burden to prove the exceptional circumstance that the amount computed according to the 1998 ACSG would result in a computation higher than the reasonable needs of the children at the appropriate standard of living and to prove the amount of that excess.

The family court considered Mother's February 19, 2000 I & ES stating her actual income and expenses at that time, based on her income plus child support of $820 per month from Father and $70 for one-half of medical insurance for the children, and decided that this case involved an exceptional circumstance. The exceptional circumstance was that child support of $1,720 plus the cost of medical insurance covering First Children and one-half of the uninsured medical and dental expenses incurred by First Children funded the reasonable needs of First Children at the appropriate standard of living. In COL No. 11, the family court decided that Father "has an unusually high monthly income that would result in a computation higher than the reasonable needs of the children." Clearly, the family court's decision that Father's income is "unusually high" is based on (a) its reliance on Mother's February 19, 2000 I & ES stating her actual income and expenses at that time, based on her income plus child support of $820 per month from Father and $70 for one-half of medical insurance for the children, and (b) its failure to decide and consider the appropriate standard of living.

Another exceptional circumstance is "[o]ther child support obligations of a parent that render him or her unable to pay the ACSG level of child support for the subject children." There is no indication on the record of the family court's decision on this issue.

## CONCLUSION

Accordingly, we vacate the following parts of the April 18, 2001 Findings of Fact, Conclusions of Law, and Order:

(a) The finding, in Conclusion of Law No. 2, of the amount of the monthly income of Father, and related findings in Conclusions of Law Nos. 3, 4, 5, and 6.

(b) The decision, in Conclusions of Law Nos. 7, 8, 9, 10, 11, 14, and 15, to order a downward deviation from the 1998 Child Support Guidelines.

---

8. In the terms of the 1998 Amended Child Support Guidelines, this translates into Parts I, II, and III.

9. We recommend that, in these kinds of cases, (a) the family court cause the payee party to present an expense statement showing how the payee's income plus the amount payable pursuant to the guidelines would be spent if the latter was paid and received, and (b) the payor party prove what part(s) of the children's stated expenses are unnecessary to fund the reasonable needs of the child(ren) at the appropriate standard of living.

(c) The decision, in Conclusion of Law No. 24, "that the higher educational provision of the parties' 1988 Divorce Decree should be re-affirmed and enforced[,]" and similar decisions in Conclusions of Law Nos. 22 and 23.

We vacate sections 1 and 3 of the November 20, 2000 Order.

We reverse the January 19, 2001 Order entered by the Family Court of the First Circuit.

We remand for further proceedings consistent with this opinion.