WALTER ELMER BRIDGMAN, III, Plaintiff-Appellee,
v.
DAWN M. BRIDGMAN, Defendant-Appellant.
No. 28613.
Intermediate Court of Appeals of Hawaii.
July 30, 2009.
On the briefs:
Robert M. Harris for Defendant-Appellant.
Chunmay Chang Edward R. Lebb for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
FOLEY, Presiding Judge, NAKAMURA, and FUJISE, JJ.
This appeal involves a dispute over child support between Defendant-Appellant Dawn Marie Bridgman (Mother) and Plaintiff-Appellee Walter Elmer Bridgman III (Father). Mother appeals from the "Order Regarding Defendant's November 21, 2006 Motion for Post-Decree Relief and Plaintiff's December 14, 2006 Motion for Post-Decree Relief" (Child Support Order) that was entered on June 12, 2007 by the Family Court of the First Circuit (family court).[1] In the Child Support Order, the family court denied Mother's request that Father be required to pay $3,400 per month in child support as calculated under the applicable Amended Child Support Guidelines (ACSG), and it instead determined that exceptional circumstances warranted a downward deviation from the ACSG amount to a payment by Father of $2,400 per month.
On appeal, Mother argues that the family court erred in determining that exceptional circumstances warranted a downward deviation from the $3,400 per month ACSG computation to a payment by Father of $2,400 per month. Mother contends that: 1) in rendering its decision, the family court considered the irrelevant factor of whether Father and Mother had agreed to send the children to private school; 2) Father did not meet his burden of proving that the amount of child support calculated under the ACSG exceeded the children's reasonable needs at the appropriate standard of living; and 3) the financial assistance provided by the children's maternal grandmother (Grandmother) in paying the children's expenses was not an exceptional circumstance warranting a downward deviation from the ACSG.
For the reasons discussed below, we vacate the portion of the Child Support Order that determined Father's child support payment obligation, and we remand the case for further proceedings consistent with this Summary Disposition Order.

I.

A.
Mother and Father were married in October 1995. At the time, Father was in the U.S. Navy, having graduated from the U.S. Naval Academy in 1993, and Mother was receiving social security disability benefits, having been rated with a full physical disability due to chronic fatigue syndrome. The parties had three children during their marriage, the eldest born in 1997 and twins born in 1999. The parties lived with Mother's parents, then moved to a separate house also owned by Mother's parents.
Mother and Father separated in 1999 after the twins were born, and Father moved to Georgia. The divorce decree was entered on December 19, 2001, and awarded Mother sole legal and physical custody of the children. The decree provided that Father shall pay $1,900 per month in child support and that Father's child support payment would be recalculated every year after July 1, 2002, based on Father's updated salary.
The parties' eldest child was four years old when the divorce decree was entered. Following the divorce, the children began attending a private school. The children also became involved in various extracurricular activities including tae kwon do, art classes, and "brain gym." Father voluntarily increased his child support payments to $2,000 per month in January 2002 and to $2,100 per month in 2003 . In October 2005, Father moved to Washington and purchased a home. He remarried in 2006, and has two step-children.
After the divorce, Mother remained unemployed due to her disability. She received social security disability benefits of $593 per month as well as $33 per month for each child. Mother and the children lived rent free in a home owned by her parents. Grandmother has paid for the children's private school, extracurricular activities, housing, and vehicles and has also paid for vacation trips taken by Mother and the children.

B.
On November 21, 2006, Mother filed a motion for post-decree relief. Pertinent to this appeal was her request for modification of child support in accordance with the ACSG. Father opposed this request and also filed his own motion for post-decree relief.
Mother submitted an updated income and expense worksheet, in which she claimed her total household expenses to be $1,357 per month and the children's personal expenses to be $5,327 per month. The children's personal expenses included $3, 597 per month for educational expenses and $600 per month for "[e]xtra-curricular classes: guitar, taekwondo, and drama."
After a trial, the family court issued the Child Support Order. The family court determined that Father's child support obligation as calculated under the ACSG was $3,400 per month, which was based on a monthly gross income for Father of $9,896. The family court, however, found that exceptional circumstances warranted a downward deviation from the ACSG calculation and ordered Father to pay the reduced amount of $2,400. The family court determined that $2,400 per month for child support "sufficiently provides for and meets Father's obligation to pay the reasonable needs of the children within the appropriate standard of living." It subsequently issued written findings of fact and conclusions of law in support of the Child Support Order.

II.

A.
"Decisions determining what is an exceptional circumstance authorizing an exceptional circumstance deviation. . . from the . . . ACSG are conclusions of law reviewed de novo under the right/wrong standard of review. Decisions whether to order [such deviations] are discretionary decisions reviewed under the abuse of discretion standard of review." Child Support Enforcement Agency v. Doe, 104 Hawai'i 449, 455, 91 P. 3d 1092, 1098 (App. 2004) (citations omitted).
Under Hawaii Revised Statutes (HRS) § 571-52.5 (2006), the family court must use the applicable ACSG to determine child support unless "exceptional circumstances warrant departure." The party seeking an exceptional circumstances departure from the amount computed under the ACSG has the burden of proof on both the existence of an exceptional circumstance warranting departure and the extent of the departure. Matsunaga v. Matsunaga, 99 Hawai'i 157, 167, 53 P.3d 296, 306 (App. 2002); Richardson v. Richardson, 8 Haw. App. 446, 457, 808 P.2d 1279, 1286-87 (1991). The ACSG list examples of exceptional circumstances warranting departure, including: "Where the amount of child support as calculated by the [ACSG] Worksheet for the subject chid(ren) exceeds the reasonable needs of the child(ren) based on the child(ren)'s appropriate standard of living, which will be determined on a case-by-case basis [.]" The family court relied upon this particular exceptional circumstance to justify its downward deviation from the amount of child support calculated under the ACSG for Father.
In Richardson, we concluded that three questions of fact must be answered by the family court in determining whether the ACSG computation exceeds the reasonable needs of the children based on the children's appropriate standard of living: "(1) What is the appropriate standard of living? (2) What is the total cost of the children's reasonable needs at the appropriate standard of living? (3) If the answer to question (2) is less than the total amount computed according to . . . the ACSG, then the case involves an exceptional circumstance." Richardson, 8 Haw. App. at 457, 808 P.2d at 1287.
This court also identified relevant criteria for the family court to use in deciding the children's appropriate standard of living:
What criteria shall the family court use when factually deciding the child's appropriate standard of living in a particular case? In our view, the following subsections of HRS § 576D-7 (Supp. 1390) are the most relevant:
(a)(1) All earnings, income, and resources of both parents; . . .
(2) The earning potential, reasonable necessities, and borrowing capacity of both parents;
. . . .
(7) To balance the standard of living of both parents and child . . .;
(8) To avoid extreme and inequitable changes in either parent's income depending on custody; . . .
. . . .
(b)(3) Applied to ensure, at a minimum, that the child for whom support is sought benefits from the income and resources of the obligor parent on an equitable basis in comparison with any other minor child of the obligor parent.
Based on the above, we conclude that (a) the parents' prior financial situation; (b) the custodial parent's current financial situation; and (c) the noncustodial parent's current financial situation are all relevant considerations when factually determining the child's appropriate standard of living in a particular case.
Id. at 457-58, 808 P.2d at 1287 (brackets omitted; ellipsis points in original).
In Matsunaga, we recommended that in cases involving a claim that the ACSG computation exceeds the reasonable needs of the children based on the children's appropriate standard of living:
(a) the family court cause the payee party to present an expense statement showing how the payee's income plus the amount payable pursuant to the guidelines would be spent if the latter was paid and received, and (b) the payor party prove what part(s) of the children's stated expenses are unnecessary to fund the reasonable needs of the child(ren) at the appropriate standard of living.
Matsunaga, 99 Hawaii at 167 n.9, 53 P.3d at 306 n.9.
In this case, the family court did not use the approach recommended in Matsunaga. The family court did not ask Mother to present an expense statement showing how she would spend her income and the $3,400 calculated under the ACSG or require Father to prove what part of Mother's proposed expenditures are unnecessary to fund the reasonable needs of the children at the appropriate standard of living. Instead, the family court concluded that "[u]nder the circumstances of this case, the children's reasonable needs and their appropriate standard of living can most fairly be established by using [Father's] monthly personal expenses and the parties' prior agreements, express and implied, as guidelines." Read in context, the phrase "the parties' prior agreements" referred to the parties' prior agreements regarding Father's child support payments, which were not based on ACSG calculations.
We conclude that the family court erred in relying on the parties' prior child support agreements. The ACSG specifically provide that "the parties' agreement for the payment of less than the amount of child support as calculated from the [ACSG] is not an exceptional circumstance." Moreover, in Matsunaga, we concluded that presumptively, the amount of child support necessary to fund the appropriate standard of living is the amount computed under the ACSG. Matsunaga, 99 Hawai'i at 167, 53 P.3d at 306. We therefore held in Matsunaga that the family court erred in determining the childrenfs appropriate standard of living based on the existing child support payments, which were lower than the ACSG amount. Id.
In the present case, the family court also relied upon Father's monthly personal expenses, which it found to be about $1,050. While Father's monthly personal expenses may be a relevant factor to consider in determining the children's appropriate standard of living, the family court did not explain in its findings and conclusions how Father's monthly personal expenses were used in determining the children's reasonable needs at the appropriate standard of living.
The family court found that the expenses incurred by Mother to send the children to private school and for their extracurricular activities were not reasonable expenses within their appropriate standard of living. The family court, however, made this finding without first answering the predicate questions set forth in Richardson: (1) What is the appropriate standard of living? (2) What is the total cost of the children's reasonable needs at the appropriate standard of living? Without knowing how the family court answered these predicate questions, we cannot determine whether the court's finding was proper.
Mother argues that the family court improperly considered the irrelevant factor of whether Father and Mother had agreed to send the children to private school before the divorce. We agree with Mother to the extent she argues that the lack of prior agreement regarding private education expenses (PEX) does not automatically render PEX unreasonable at the appropriate standard of living. Rather, whether PEX are reasonable or unreasonable expenses will depend on the appropriate standard of living. It is not clear from the family court's findings and conclusions whether it found the children's PEX per se unreasonable because there was no prior agreement to send the children to private school.
Mother contends that the family court erred in determining that Grandmother's financial assistance in paying the children's expenses was an exceptional circumstance warranting a downward deviation from the ACSG calculation. Although the family court referred to Grandmother's financial assistance, it is not clear to what extent the family court relied upon this factor in its decision to deviate from the ACSG calculation.
We note that the ACSG define gross income to include "[m]onetary gifts . . . that are continuous" and that the family court found that "[Grandmother] has regularly and consistently paid for the children's private school, extracurricular activities, housing and vehicles and there is no indication that she will not continue to do so." The family court, however, did not include Grandmother's regular payments in Mother's gross income in computing the amount of child support under the ACSG. Imputing regular payments by Grandmother to Mother's gross income for purposes of the ACSG calculation would appear to be consistent with the guideline approach to determining child support. See Sussman v. Sussman, 112 Hawai'i 437, 441, 146 P. 3d 597, 602 (App. 2006) (concluding that "the family court may and should consider regular and consistent monetary gifts received by a spouse as part of that spouse's actual financial resources, condition and ability when determining spousal support").

III.
We conclude that the family court relied upon an erroneous factor (the parties' prior child support agreements) in determining the children's reasonable needs at the appropriate standard of living and thus abused its discretion in rendering its decision on Father's child support payment obligation. Accordingly, we vacate the portion of the Child Support Order that determined Father's child support payment obligation, and we remand the case for further proceedings consistent with this Summary Disposition Order. On remand, we instruct the family court to provide detailed findings to explain how it answered the Richardson questions, if the family court decides to deviate downward from the ACSG on the ground that the ACSG computation exceeds the reasonable needs of the children based on the children's appropriate standard of living. We do not decide whether the family court may order a downward deviation from the ACSG or what the appropriate amount of child support should be.
NOTES
[1] The Honorable Kenneth E. Enright presided over the proceedings relevant to this appeal.